IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE BORDA, # 30421-037 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-15-2057 |
| J. HOWARD LOSIEWICZ, MRS. T. HART, | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Pending and ready for resolution is plaintiff Jose Borda's ("Borda or Jose Borda") *Bivens*[1] complaint alleging that Defendants J. Howard Losiewicz and T. Hart[2] violated his substantive and procedural rights to due process at his disciplinary hearing. (ECF No. 1).[3] Defendants, by their counsel, move for dismissal or summary judgment. (ECF No. 4).

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Borda was notified by letter of the dispositive motion and informed that he was entitled to file affidavits and verified materials in opposition, and that his case could be dismissed (or summary judgment entered) if he failed to show a genuine dispute of material fact. (ECF No. 5). Borda filed an opposition with exhibits (ECF No. 8), to which Defendants replied. (ECF No. 11). Subsequently, Borda submitted a filing titled "Praecipe" to supplement his Response. (ECF No. 12).

---

[1] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Defendant is also called Tammie J. Hart or Ms. Hart-Smith. *See e.g*. ECF No. 1-1 at 7 (Discipline Hearing Office Report); ECF No. 4-2 at 18 (Notice of Discipline Hearing); and ECF No. 4-3 (Decl. of Tammie J. Hart).

[3] Citations to the record reflect the electronic docketing system.

The relevant issues have been fully briefed, and the court now rules, no hearing is deemed necessary. Local Rule 105.6. (D. Md. 2014). For the following reasons, Defendants' motion will be treated as a Motion for Summary Judgment and granted.

## BACKGROUND

Borda is a federal inmate serving a life sentence[4] and is incarcerated at the Federal Correctional Institution in Cumberland, Maryland (FCI-Cumberland). Howard Losiewicz is the Disciplinary Hearing Officer (DHO) at FCI-Cumberland who presided at Borda's discipline hearing. Tammie J. Hart is employed at FCI-Cumberland as the Educational Supervisor, and was Borda's staff representative at his disciplinary hearing. (ECF No. 1-1 at 7). Borda asserts Losiewicz and Hart violated his substantive and procedural due process rights at his hearing: Losiewicz, by failing independently to review relevant surveillance footage and Hart by failing to demand that Losiewicz independently review the surveillance footage. (ECF No. 1 at 7-8). As relief, Borda requests expungement of his disciplinary infraction, injunctive and declaratory relief, and damages.

### I. Bureau of Prisons Inmate Disciplinary Process

The Bureau of Prison's (BOP) inmate disciplinary procedures are codified at 28 C.F.R. Part 541. (ECF No. 4-1 at 2-6). Pursuant to these regulations, staff prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate. 28 C.F.R. §541.5(a). Staff provide the inmate with a written copy of the charges against him usually within twenty-four hours of the time prison staff became aware of the incident. *Id.*

---

[4] Borda is serving a life sentence for conspiracy to distribute cocaine. (ECF No. 4-2 ¶3).

An investigating officer reads the charges to the inmate and asks for the inmate's statement, advising the inmate of the right to remain silent. *Id*. § 541.5(b). The investigator conducts an inquiry and records all actions on the Incident Report. *Id*. The investigator sends all relevant materials to the Unit Disciplinary Committee (UDC) for review. *Id*. § 541.7. The inmate may appear before the UDC during its review of the Incident Report, and is entitled to make a statement and to present documentary evidence. *Id*. § 541.7(e). The UDC may, as is the case here, refer the case to a disciplinary hearing officer (DHO) for further proceedings.

The DHO is an independent hearing officer. *Id*. § 521.8(f). When charges are referred to the DHO, the inmate is advised of his or her rights at the hearing. The inmate may indicate a choice of staff representative, if any, and the names of witnesses to be called to testify and what that testimony is expected to provide or the disclosure of documentary evidence. *Id*. §§541.7(g); 541.8. The DHO determines whether or not the inmate committed the prohibited act charged and/or a similar prohibited act. *Id*. The DHO prepares a record of the proceedings, including whether the inmate was advised of his or her rights, the DHO's findings, a decision, and the specific evidence relied upon in making the determination. The inmate is provided a written copy of the DHO report. *Id*. §541.8(h).

## II. Bureau of Prisons Telephone Policy

Generally, an inmate may make a request to call a person of his or her choice outside the institution on a telephone provided for that purpose. *Id.* § 540.100. Limits and conditions may be imposed on an inmate's telephone privileges consonant with the BOP's correctional management responsibilities to ensure prison and public security. *Id.* Restrictions on telephone use may also be imposed as a disciplinary sanction.

3

Each inmate is given a telephone access code and may not possess another inmate's telephone access code number. *Id*. § 540.101(c). Inmates are prohibited from giving his or her telephone access code number to another inmate, and must report a compromised telephone access code number immediately to staff. *Id*. The Warden establishes procedures that enable monitoring of telephone conversations on any telephone located within the institution to preserve the security and orderly management of the institution and to protect the public. *Id*. § 540.102.

### III.    Jose Borda's Allegations

Borda claims he was sanctioned after a disciplinary hearing for a telephone use infraction he did not commit. The gravamen of his complaint is that Losiewicz failed personally to review a surveillance tape of the call which Borda believes would have exonerated him.

Borda states that on April 4, 2014, he went to his cell at approximately 11:15 a.m. to eat lunch. He ate lunch in his cell for approximately 25 minutes. During that time, he talked to his cellmate and cousin, Christian Borda. (ECF No. 1 at 3). Jose Borda states he then left his cell to log on to his TRULINCS[5] account to check his e-mail. Borda read his e-mail, and then proceeded to telephone station 4735-CUM-C-B where he placed a call to his friend Jamie Rodriguez at (301) 723-7628. Rodriguez is Christian Borda's girlfriend. Borda states that he placed the call at approximately 11:48 a.m. and it lasted about two minutes. Jose Borda returned to his cell after the telephone call ended. He informed Christian Borda that Rodriguez wanted

---

[5] TRULINCS is the acronym for The Trust Fund Limited Inmate Computer System, an application that enables electronic messages to be exchanged between inmates and the general public in a secured manner. *See* https://www.bop.gov/ inmates/communications.jsp.

Christian Borda to call her. Jose Borda then left for his prison job in the UNICOR[6] work shop. *Id*.

Subsequently, Jose and Christian Borda were questioned separately by correctional officers concerning the telephone call. Jose Borda was later given an Incident Report charging him with providing his telephone access number to Christian Borda. Jose Borda denies permitting his cousin to use his access number, and maintains that he did not commit the institutional rule violation.

Borda asserts that the surveillance tape shows that he was speaking on the phone at 11:48 am while Christian Borda remained in their cell. Further, Borda disputes the other evidence used against him at the disciplinary hearing. Christian Borda states in his sworn "Statement of Facts" that when questioned by Officer K. Liller in the presence of other correctional staff about the call, he was not provided the Spanish interpreter he requested. ECF No. 1-1 at 29.[7] Christian Borda identifies himself as a Colombian national who is fluent in Spanish, but speaks broken English. *Id*. Christian Borda states he was allowed to hear only ten seconds of the telephone call and then asked to identify the female and male voices on the telephone. *Id.* When asked by Officer Liller whether he was certain it was his voice, Christian Borda answered he was not sure, that it could be his cousin Jose Borda's voice. *Id*. Liller then stated "no, no, no, you told me that

---

[6] UNICOR is the trade name for Federal Prison Industries (FPI): a wholly owned, self-sustaining Government corporation that sells services and goods made by inmates. *See* https://www.bop.gov/inmates/custody_and_care/ unicor.jsp.

[7] The record suggests Christian Borda's "Statement of Facts" was also presented at the Discipline Hearing. *See infra* p. 7 (summary of evidence suggesting Christian Borda presented a statement at the hearing); *see also* ECF No. 1 at 6 ¶16 (describing Christian Borda's written statement presented to the DHO).

it's [sic] your voice, and I have two witness [sic]."  Christian Borda denies using his cousin Jose's telephone access number to place the call.  *Id*.

### IV.  Incident Report

On April 9, 2014, Borda was given Incident Report No. 2569127, charging him with a Code 297 violation, "Use of the telephone for abuse other than criminal activity."  (ECF No. 4-2 at 2-Decl. of Howard Losiewicz ¶ 4; ECF No. 1-1 at 1).  The Incident Report reads that on April 8, 2014, Officer K. Liller was reviewing phone calls to telephone numbers frequently called by Christian Borda, who was on continuous phone monitoring due to his record of serious abuse.  *Id*.  Liller observed that telephone number 301-723-7628, Christian Borda's girlfriend's telephone number, was called from Jose Borda's phone access number on April 4, 2014 at 11:48 a.m. from station number 4735-CUM-C-B.  ECF No. 1-1 at 1 (Incident Report).  Liller listened to a recording of the conversation, and "… could 100% positively identify this as inmate Christian Borda's voice through voice recognition.  I was able to know this as being inmate Christian Borda's voice because I have listened to approximately 500 phone calls placed by this inmate."  *Id*.

On April 8, 2014, Liller interviewed Christian Borda and played approximately 45 seconds of the recording of the phone call.  Also present during the interview were Lieutenant Baldwin and Senior Officer Specialist Tummino.  Christian Borda confirmed that it was his girlfriend's voice and his voice on the phone recording.  *Id.*  Liller then asked Christian Borda whether he was sure it was his voice on the recording, and Christian Borda responded "Yes."  *Id*.  It was then that Liller determined Christian Borda had used Jose Borda's access number to circumvent institutional monitoring. *Id.*

6

## V. Unit Disciplinary Committee

Jose Borda appeared before the Unit Disciplinary Committee ("UDC") on April 10, 2014. (ECF No. 4-2 ¶ 5; ECF 1-1 at 1-2). Borda denied the telephone abuse charge against him. Further, he told the UDC that it was his voice on the call. *Id*. He asserted Christian Borda listened "only like ten seconds, he didn't remember the call. I call [sic] his girlfriend." (ECF No. 1-1 at 1). Borda asserted the camera would show that Christian Borda was in their cell when Jose Borda placed the call. *Id*.

The UDC referred the charge to the DHO based on the severity of the incident. (ECF No. 4-2 at 12 and ECF No. 1-1 at 1). The UDC recommended that if Borda was found guilty, he be sanctioned with loss of good conduct time. The UDC noted that Borda had maintained an infraction free record for the past thirteen years at FCI-Cumberland, and recommended leniency in regard to other possible sanctions. (ECF No. 1-1 at 2). Jose Borda was given a copy of his inmate rights, elected to have a staff representative and requested Defendant Tammie J. Hart. (ECF No. 4-2 at 18). He did not request any witnesses. (ECF No. 4-2 at 13-15, 17-18).

### A. Disciplinary Hearing

DHO Officer Losiewicz conducted Borda's disciplinary hearing on April 22, 2014. Borda was represented at the hearing by Tammie Hart. Borda acknowledged receiving a copy of the Incident Report, stated he understood his rights, and denied the charge against him. ECF No. 1-1 at 7. Borda asked Losiewicz to review the surveillance recording of the telephone, and his request was denied. ECF No. 1 at 5. Borda claims he then asked Tammie Hart to "demand" that Losiewicz independently review the video surveillance footage. *Id*. Borda claims that Hart disregarded his request. *Id*.

A written summary was presented in Jose Borda's defense. The DHO summary of that statement reads:

> Borda appeared at the hearing, acknowledged having received a copy of the incident report and stated he understood his rights before the DHO. Borda denied CHRISTIAN BORDA was using JOSE BORDA'S telephone account. BORDA claimed he left for work shortly after the phone call.

*Id.* at ¶ III. B (Incident Report, Summary of Inmate Statement).

In preparing for the hearing, and at Borda's request, Hart viewed the surveillance videotape. (ECF No. 4-3 ¶ 3). She told the DHO that when she viewed the videotape, she witnessed Christian Borda using the phone at that time. (ECF No. 1-1 at 7 and ECF No. 4-3 ¶3). Hart attests in her declaration:

> [Borda's] "account number was used on a specific phone, at a specific time, and there was a videotape that captured the person using that phone at that time. In preparation for the hearing, and at the request of Mr. Borda, I viewed the videotape, and witnessed his cousin using the phone at the time in question. I reported what I observed at the disciplinary hearing. I deny that I acted with any intent to deprive Plaintiff of his constitutional rights.

(ECF No. 4-3 ¶ 3).

The Disciplinary Report identifies the information Losiewicz relied on to find Jose Borda guilty of committing the violation. Specifically, Losiewicz relied on the UDC investigation, the Incident Report, and Lt. S. Baldwin and Officer Tunnino's memorandum in which they stated they witnessed Christian Borda listen to the telephone call and identify himself and his girlfriend on the telephone call charged to Jose Borda's telephone account. (ECF No. 4-2 at 22, ¶ III D). He also considered Officer Liller's investigation and statements in the Incident Report, including his recognition of Christian Borda's voice. Additionally, Losiewicz considered Tammi Hart's description of the surveillance video. *Id.* at 22-23. Losiewicz noted that Jose Borda denied the

8

charge and claimed it was he, not Christian Borda, who placed the phone call. Losiewicz determined Borda had motive for denying the charge to evade responsibility for his actions. *Id*. at 23; ECF No. 1-1 at 8-9.

Based on the greater weight of the evidence, Losiewicz found Jose Borda had circumvented the telephone monitoring procedures by allowing or making it possible for another inmate to use his telephone account to make phone calls. Losiewicz imposed sanctions of 120 days telephone restrictions on Borda, with an additional 264 days of telephone privilege restrictions, all suspended pending 180 days of clear conduct. (ECF No. 1-1 at 9 and ECF No. 4-2 at 23). The extended telephone privilege sanction, suspended for good conduct, was imposed to serve as an incentive to refrain from committing future infractions. ECF No. 4-2 at 23. Notably, Borda was not sanctioned with loss of good time credit. Jose Borda unsuccessfully appealed the DHO Officer's finding and the sanctions imposed. ECF No. 1-1 at 11, 13.[8]

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is

---

[8] Jose Borda also wrote to the Colombian Consulate in Washington, D.C. to dispute the Hearing Officer's findings. The Vice-Consul of Colombia subsequently visited Borda at FCI-Cumberland on June 26, 2014, and sent correspondence to FCI Warden Timothy Stewart to state that both Jose and Christian Borda assured her that Jose Borda did not give his PAC to Christian Borda. ECF No. 1-1 at 18-20.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby*, 477 U.S. at 252.

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D. Md. 2012), aff'd, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof...will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). Although pro se litigants are to be given some latitude, the above

standards apply to everyone.  Thus, as courts have recognized repeatedly, even a pro se party may not avoid summary judgment by relying on bald assertions and speculative arguments.  *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D. Md. 2011) (citing cases).

**II.     Due Process**

Inmates retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).  Where there is a liberty interest at stake, however, such as in disciplinary proceedings where a prisoner is deprived of good-time credits, the inmate is entitled to certain procedural protections.  These include:  (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker.  *See Wolff*, 418 U.S. at 564-571.  There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel.  *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 323 n. 5.

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455

11

(1985). A disciplinary board's factual findings are not subject to "second-guessing upon review." *Id.* Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va.1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill,* 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Howard v. Greene*, No. JKB-14-929, 2015 WL 363509, at *4 (D. Md. Jan. 23, 2015). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

When an inmate is sanctioned for misconduct, a liberty interest exists when the penalty lengthens the confinement or involves an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Borda's temporary loss of phone privileges is not such an "atypical and significant hardship." *See e.g. Freitas v. Ault,* 109 F.3d 1335, 1337–38 (8th Cir. 1997) (Loss of work and phone privileges did not constitute atypical and significant hardship.); *Richardson v. Johnson*, 2001 WL 360843, *1 n. 1 (N.D.Tex. April 5, 2001) (Phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life.); *James v. Odom*, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000) (A 45–day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship.).[9]

---

[9] Borda generally claims that he lost wages from his Unicor job, the possible denial of clemency, a possible reduction of his sentence, and "the recent two point reduction for first time nonviolent drug cases." ECF No. 8 at 8. Borda provides no legal or factual basis to suggest these consequences, even if related to the discipline, implicate a liberty interest.

Borda does not challenge the applicability or process afforded him, but takes issue with the evidence introduced at his hearing. Borda's disagreement with the evidence is insufficient grounds to disturb the DHO's decision. Borda does not dispute he was provided advance written notice of the charge, received a written statement identifying the evidence relied upon and the reasons for the disciplinary action, was allowed to call witnesses and present documentary evidence at the hearing, was provided the staff representative that he requested, and the decision-maker was impartial. The DHO Officer's determination relied on Officer's Liller's identification of Christian Borda's voice on the telephone recording. Liller stated he "could 100% positively identify this as inmate Christian Borda's voice through voice recognition. I was able to know this as being inmate Christian Borda's voice because I have listened to approximately 500 phone calls placed by this inmate." ECF No. 1-1 at 1 and ECF No. 4-2. Insofar as Borda counters that if Liller had been "literate" in Spanish, he would have understood the telephone conversation and identified him as the caller (ECF No. 8 at 4-5), he fails to appreciate that Liller's identification was premised on voice recognition, not the content of the conversation.

The DHO also relied on Tammie Hart's report that after reviewing the surveillance tape, she identified the caller as Christian Borda. Further, three correctional officers witnessed Christian Borda identify his voice on the recorded telephone call. This information is sufficient to demonstrate there is "some evidence" in the record to support the DHO's decision. Due process did not require Hart to request the DHO review the surveillance tape. Nor did due process require the DHO to conduct an independent review of the tape. *See Quick v. Drew,* No. 5:11-2059-GRA-KDW, 2012 WL 3000672, at *5 (D. S.C. June 25, 2012) (finding there was no

violation of due process when the DHO did not personally review a potentially exculpatory videotape).

DHO Losiewicz's findings were not arbitrary or capricious, and this court will not second guess his decision. Borda's evidence disputing the charge is insufficient to disturb a DHO decision where, as is the case here, the DHO determination is based on "some evidence" in the record. *See Baker*, 904 F.2d at 932 ("…the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]").

In summary, Borda received all process he was due. Indeed, he arguably received more process than he was due given there was no loss of good conduct time or atypical and significant hardship. *See Wolff*, 418 U.S. at 558. Even when the facts are judged in the light most favorable to Borda, no genuine issues of material fact are presented. Consequently, Defendants are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment will be granted by separate order to follow.

  March 21, 2016                             _____/s/_____
Date                                                  DEBORAH K. CHASANOW
                                                      United States District Judge

14